UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



_____

MICHAEL SABO,

        Petitioner,

v.

JOSEPH NOETH, *Superintendent, Attica Correctional Facility*,

        Respondent.
_____

17-CV-820-LJV
DECISION & ORDER

On August 18, 2017, the petitioner, Michael Sabo, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254.  Docket Item 1.  In that petition, Sabo alleged that his convictions in New York State Supreme Court, Kings County, were unlawfully obtained because (1) his guilty plea was involuntary; (2) his due process rights were violated when the sentencing court effectively terminated his parental rights; and (3) his plea counsel was ineffective in failing to advise him that his parental rights would be effectively terminated as a consequence of his plea.  *Id.*  On May 14, 2020, the respondent, Joseph Noeth, filed an answer, Docket Item 13; a memorandum of law in opposition to Sabo's petition, Docket Item 14; and a supplemental state court record, Docket Item 14-1.  Sabo replied on July 13, 2020.  Docket Item 21.

On July 20, 2020, this Court referred the case to United States Magistrate Judge H. Kenneth Schroeder, Jr., for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B).  Docket Item 25.  On August 24, 2020, Judge Schroeder issued a Report and Recommendation ("R&R") finding that the petitioner's application for a writ of habeas corpus should be denied and the petition dismissed.  Docket Item 26.  On November

12, 2020, Sabo objected to the R&R on two grounds: (1) it "overlooks facts that are critical" to his claims; and (2) it fails to "address the specific issues raised" by each claim. Docket Item 31 at 2. On December 9, 2020, Noeth responded to the objections, Docket Item 35, and on December 31, 2020, Sabo replied, Docket Item 36.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully and thoroughly reviewed the R&R; the record in this case; the objection, response, and reply; and the materials submitted to Judge Schroeder. Based on that *de novo* review, the Court accepts and adopts Judge Schroeder's recommendation to deny Sabo's habeas corpus petition.[1]

## DISCUSSION

### I. VOLUNTARINESS OF PLEA

In his petition, Sabo first claims that his plea was not knowing and voluntary because his statements during his plea colloquy contradicted an element of the crimes to which he pleaded guilty. Docket Item 1 at 12-15. Sabo raised this argument on direct appeal in state court. Docket Item 1-1 at 22-35. The New York State Supreme Court, Appellate Division, Second Department, found that Sabo's argument was procedurally barred because he failed to properly preserve his claim for appellate

---

[1] The Court assumes the reader's familiarity with the facts alleged in the petition, *see* Docket Item 1, and Judge Schroeder's analysis in the R&R, *see* Docket Item 26, and will refer only to the facts necessary to explain its decision.

review and that, regardless, "the record of the plea proceeding establishe[d] that the plea of guilty was knowing and voluntary." *People v. Sabo*, 117 A.D.3d 1089, 986 N.Y.S.2d 232 (2nd Dep't 2014) (citations omitted).

Judge Schroeder found that "the Appellate Division's [] merits-based rejection of [Sabo's] claim was not contrary to clearly established federal law."[2] Docket Item 26 at 6. This Court agrees.

Under 28 U.S.C. § 2254(d)(1), a federal court "shall not" grant a state prisoner's habeas petition based on a claim adjudicated on the merits in state court "unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States." A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or if the state court decides a

---

[2] As noted above, the Appellate Division also found that Sabo failed to properly preserve his argument for appeal and that he did not qualify for an exception to the state's preservation rule. *Sabo*, 117 A.D.3d at 1089. The respondent argues that the Appellate Division's reliance on that procedural rule presents an adequate and independent state ground that precludes federal habeas review. Docket Item 14 at 13-14. Sabo, in turn, argues that the application of the state rule was "exorbitant" and "uneven," and, therefore, that it was not an adequate ground for denying relief. Docket Item 21 at 2-5. Judge Schroeder declined to address that argument because the Appellate Division's alternative, merits-based rejection of Sabo's claim was not contrary to clearly established federal law. Docket Item 26 at 6. This Court also declines to weigh in on whether, as Sabo suggests, the application of the state procedural rule was "exorbitant" and "uneven." *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (stating that bypassing procedural questions to reach the merits of a habeas petition is justified "if the [underlying issues] [are] easily resolvable against the habeas petitioner, whereas the procedural bar issue involve[s] complicated issues of state law"); *see also Anderson v. Graham*, 2018 WL 1428249, at *2 (W.D.N.Y. Mar. 22, 2018) (declining to "resolve the issues raised by [the r]espondent's assertion of the defenses of non-exhaustion and procedural default" and proceeding to decide the claims on the merits).

case with facts "materially indistinguishable from . . . Supreme Court precedent" and reaches the opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court's decision is an "unreasonable application" of clearly established federal law when the state court identifies the correct legal principle "but unreasonably applies that principle to the facts of the [] case." *Id.* at 413.

Sabo urges this Court to reject the R&R because although it discussed the law on the voluntariness of pleas generally, it failed to address the "pivotal issue": whether a plea is voluntary when a defendant's statements at the plea colloquy contradict an element of the crime. Docket Item 31 at 3-4 (emphasis omitted). But Judge Schroeder indeed addressed this issue. In fact, he carefully reviewed the plea colloquy in detail and correctly found that nothing in it was contradictory or otherwise suggested an involuntary plea. Docket Item 26 at 7-11.

During the plea colloquy, the Court asked Sabo to confirm that the allegations in indictment were correct, and each time Sabo confirmed that they were. Docket Item 1-5 at 14-15. What is more, Sabo not only confirmed that the facts alleged in the indictment were correct, but he also stated that he did the acts charged in the indictment. *Id.* For example, in response to questions about count one of indictment 3380-2009, Sabo stated: "I did what the indictment alleges, what the indictment says I did during the course of time." *Id.* at 15. Similarly, when asked about his plea to count one of the other indictment, in 3361-2010, Sabo said: "I did the acts that the Judge just described." *Id.*

Sabo contends that other statements he made during the plea colloquy are inconsistent with the text of the indictment. Docket Item 31 at 2-4. Those

4

contradictions, he argues, suggest an "infirm factual basis" that undermines the voluntariness of his plea. *Id.* at 4. Although he agrees with the R&R that the due process clause generally does not mandate a factual basis inquiry by a state court, Sabo asserts that more is required when the defendant makes inconsistent or contradictory statements about the crime during the plea colloquy. *Id.*

Sabo's legal argument may well be correct. In *Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir. 1984), the Second Circuit reiterated that "due process does not mandate a factual basis inquiry by state courts" but also noted that certain circumstances, such as inconsistent responses to questions, may indicate that a factual basis inquiry is necessary to assure due process. That does not help Sabo's claim here, however, because his statements during the plea colloquy were neither inconsistent nor contradictory.

For example, count one of indictment 3380-2009 charged Sabo with abusing a minor from March 27, 2001, to October 31, 2003. Docket Item 1-5 at 13-14. The relevant crime, sexual conduct with a minor, N.Y. Penal Law § 130.75(1)(a), required proof that the defendant engaged in two or more sexual acts with a child "over a period of not less than three months in duration."

During the plea colloquy, Sabo said that he "did what the indictment alleges, what the indictment says I did during the course of time" and that he abused the alleged victim "in 2004," Docket Item 1-5 at 14-15; Sabo argues that the latter statement is inconsistent with the indictment's earlier dates, Docket Item 21 at 3. But Sabo's statement that he abused the alleged victim in 2004 is not inconsistent with his admission that he "did what the indictment alleges, what the indictment says I did during

5

the course of time." Sabo could have abused the alleged victim both in 2004 and from March 2001 to October 2003; in fact, that is exactly what he said he did. The fact that he explicitly admitted conduct both within and outside the specific time frame of count one of indictment 3380-2009 is neither inconsistent nor contradictory.[3]

Sabo's argument regarding count one of indictment 3361-2010 similarly fails. That indictment charged Sabo with 211 counts of violating state law.[4] Docket Item 1 at 4-5. Count one of indictment 3361-2010 charged Sabo with sexually assaulting a minor from June 23, 2006, to May 6, 2009. Docket Item 1-5 at 15. The relevant crime, predatory sexual assault against a child, required proof that Sabo engaged in two or more acts of sexual conduct in a period of not less than three months with a child less than thirteen years old. *See* N.Y. Penal Law §§ 130.75(1)(a), 130.96.

During the plea colloquy on this count, Sabo said, "I did the acts that the Judge just described" and, in fact, admitted more acts during an expanded time frame: "[The conduct] happened at least four times, in 2004 to 2009." Docket Item 1-5 at 15-16. Again, there is nothing contradictory or inconsistent about those two statements. It is of

---

[3] More specifically, Sabo said that he abused the victim at his home "when I was first there in 2004." Docket Item 1-5 at 14. And the record suggests that Sabo had another residence at which he abused victims. Docket Item 1-5 at 7 (noting charges or potential charges against Sabo for abusing a child at a different residence); Docket Item 14-1 at SR 98-99 (same). Significantly, however, Sabo did not say that he first abused the victim at his home in 2004. On the contrary, he said that he also did so "during the course of time" alleged in the indictment—that is, between March 2001 and October 2003. Docket Item 1-5 at 14-15. So Sabo admitted that he abused the victim when he was first at one of his homes in 2004 *and* between March 2001 and October 2003. There is nothing contradictory or inconsistent about that.

[4] These charges also involved child sexual abuse, endangering the welfare of a child, and the possession and production of child pornography. *See* Docket Item 1 at 4-5.

6

no surprise that a defendant who was charged with 200 crimes involving child sex abuse and the possession and creation of child pornography from 2001 to 2009, and who pleaded guilty to two of those crimes, would admit acts both during and outside the time frame charged in a specific count. And more to the point, admitting four acts of illegal sexual conduct from 2004 through 2009 is entirely consistent with pleading guilty to at least two such acts from June 2006 through May 2009.

In support of his argument, Sabo relies on *United States ex rel. Dunn v. Casscles*, 494 F.2d 397 (2d Cir. 1974). In *Dunn*, the Second Circuit reversed the denial of a section 2254 habeas petition because a defendant's inconsistent statements rendered his plea involuntary. *Id.* at 399-400. But the inconsistencies in *Dunn* make it inapposite here. During the plea colloquy in *Dunn*, the defendant first stated that he committed the relevant crime but later told the court "[i]f I say I [did not] do it, I [will not] get [certified for drug treatment], [you will] give me the four years and take me to trial. [I will] say I did it." *Id.* at 398. Moreover, he later explicitly told the court that he did not commit the crime:

| | |
|---|---|
| The Court: | So you [did not] do this, did you? |
| Defense Counsel: | Just tell the truth. |
| The Defendant: | No, I [did not] do it. |
| The Court: | All right, I [will not] take your plea. Let's go to trial. |

*Id.* at 389-99. During the plea colloquy, defense counsel also stated, "I [cannot] plead him under these circumstances." *Id.* at 399. But the court nevertheless accepted the defendant's plea. *Id.*

7

What transpired during Sabo's plea colloquy comes nowhere near the factual circumstances of *Dunn*. Although Sabo asserts that his "statements about the timing and the description of the timing as alleged in the indictments cannot both be true," Docket Item 31 at 4, that is not the case. Unlike defendant Dunn, Sabo did not state two things that clearly cannot both be true: "I did it" and "I did not do it." The "inconsistencies" Sabo points to do not undo any of the elements of the crimes to which he pleaded guilty. On the contrary, and as noted above, they are not inconsistencies at all.

In sum, Sabo's admissions of acts charged in the indictment as well as acts outside the indictment are not inconsistent. Unlike *Dunn* where both of the defendant's statements could not be true, Sabo's statements all can be true. What is more, unlike *Dunn*, Sabo's counsel did not state that he could not let Sabo plead guilty under the circumstances. As Judge Schroeder noted, Sabo was represented by three attorneys, all of whom were present at his plea hearing. Docket Item 26 at 9. And there is nothing to suggest Sabo's plea was based on bad advice from incompetent counsel.[5] *See Willbright v. Smith*, 745 F.2d at 781 ("Clearly, a significant factor in determining whether

---

[5] Sabo collaterally attacked his conviction on the ground that he was deprived of the effective assistance of counsel. Docket Item 1-2. New York State Supreme Court, Kings County, denied his petition, found that counsel was not ineffective, and denied Sabo's request for reconsideration. Docket Item 1-3. Sabo now reasserts his ineffective assistance of counsel claim, but as explained below, *see infra* at 12, this Court finds that the state court's denial of Sabo's ineffective assistance of counsel claim was not contrary to, or an unreasonable application of, clearly established federal law. Regardless, Sabo's ineffective assistance of counsel claim here focuses on counsel's alleged failure to advise Sabo that the sentencing court would issue orders of protection, not that he did not understand the charges he was pleading to.

a plea is intelligently and voluntarily entered is whether it was based on the advice of competent counsel.")

For all those reasons, Sabo's argument that his plea was involuntary lacks merit. Judge Schroeder correctly found that the Appellate Division's merits-based rejection of Sabo's claim was not contrary to clearly established federal law and that this claim therefore should be dismissed.

## II. DUE PROCESS VIOLATION/TERMINATION OF PARENTAL RIGHTS

Sabo next argues that his due process rights were violated because, by issuing orders of protection barring contact between Sabo and his four children, the sentencing court effectively terminated his parental rights. Docket Item 1 at 16-18. Sabo challenged those orders on direct appeal, and the Appellate Division rejected his claim and found that "[t]he defendant's contention that the Supreme Court improperly issued an order of protection pursuant to [New York Criminal Procedure Law section] 530.13 for the benefit of his children is without merit." *Sabo*, 117 A.D. 3d at 1089. Sabo now asks this Court to vacate the orders of protection.[6] Docket Item 1 at 18.

---

[6] In attacking the orders of protection, Sabo does not ask this Court to vacate or reduce his sentence of imprisonment but rather asks it to vacate the orders of protection. Docket Item 1 at 16-18. In his relief requested, Sabo also asks to be released from confinement. *Id.* at 23. Presumably, this is in connection with his first and third claims. To the extent that Sabo's petition asks this Court to reduce his term of confinement because the "sentencing court abused its discretion in issuing an order of protection barring" contact with his four children, *id.* at 16, that argument fails. Defective orders "do not render [a] defendant's sentence of incarceration invalid." *People v. Nieves*, 2 N.Y.3d 310, 316-17, 811 N.E.2d 13, 18 (N.Y.2004); *see also Dewall v. Superintendent, Mohawk Corr. Facility*, 2008 WL 3887603, at *17 (E.D.N.Y. Aug. 20, 2008) (applying *Nieves* and finding that defective orders of protection did not render petitioner's sentence invalid).

9

Neither the R&R nor the parties addressed whether the orders of protection are a sufficient restraint on Sabo's liberty to meet the "in custody" requirement of section 2254(a) and therefore whether this Court has jurisdiction to entertain Sabo's challenge. The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.*" 28 U.S.C. § 2254(a) (emphasis added). Custody is defined not only by physical confinement, however; it also encompasses those "conditions which significantly confine and restrain [the petitioner's] freedom." *Jones v. Cunningham*, 371 U.S. 236, 243 (1963); see *Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973) ("The custody requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty."); *cf. Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 894-95 (2d Cir. 1996) (finding that banishment order from tribal reservation satisfied the "in custody" requirement of analogous habeas corpus provision of the Indian Civil Rights Act of 1968, 25 U.S.C. § 1303). But regardless of whether Sabo's challenge to the orders of protection meets the "in custody" requirement, and even assuming that the requirement is met, his due process challenge fails. See *McKeon v. Heath*, 2013 WL 5818591, at *11-*12 (W.D.N.Y. Oct. 29, 2013) (assuming that the "in custody" requirement of section 2254 was met and finding that, regardless, petitioner's challenge to the orders of protection in his case failed).

In conducting habeas review, a federal court is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Therefore, the only relevant question is whether Sabo's constitutional rights were implicated by any defective orders of protection. *See Dewall*, 2008 WL 3887603, at *17.

Judge Schroeder found that they were not. Docket Item 26 at 13. Sabo objects to the R&R for "fail[ing] to address the nuances" of his due process claim and failing to understand that he is not challenging the misapplication of state law but rather the effective termination of his parental rights without due process. Docket Item 31 at 6. But Judge Schroeder addressed Sabo's due process claim and correctly found that Sabo's parental rights were not terminated without notice or the opportunity to be heard.[7] Docket Item 26 at 13.

In fact, Sabo's argument that he is entitled to due process relief because the orders of protection effectively terminated his parental rights with no notice or opportunity to be heard fails factually for several reasons. First, as the R&R correctly noted, the orders were orders of protection and did not "permanently deprive [Sabo] of access to his children or terminate his parental rights." *Id.* Second, Sabo indeed had the opportunity to be heard: he objected to the orders of protection at sentencing and litigated their appropriateness on appeal. *Id.* (citing Docket Item 1-1 at 36; Docket Item 1-6 at 14-15). Finally, Sabo still can seek relief from the orders of protection: In New

---

[7] The parties dispute whether Sabo's direct appeal exhausted his claim that his parental rights were effectively terminated by the orders of protection without notice and an opportunity to be heard. *Compare* Docket Item 14 at 21-22 *with* Docket Item 21 at 8. The R&R did not address whether Sabo exhausted this claim in state court but found that, in any event, Sabo's due process rights were not implicated. Docket Item 26 at 13.

11

York, a criminal court has the authority to modify orders of protection or make them subject to family court orders. *In re Briana L.*, 103 A.D.3d 181, 186, 956 N.Y.S.2d 518, 522 (2d Dep't 2012). So Sabo had the chance to litigate the issue and still has redress in state court for any alleged denial of due process.[8]

For all those reasons, this Court agrees with Judge Schroeder, and Sabo's due process claim is denied. Any remedy relating to the orders of protection remains in the state courts.

### III.   INEFFECTIVE ASSISTANCE OF COUNSEL

Sabo also argues that his plea attorneys were ineffective because they did not advise him that his plea would result in the termination of his parental rights. Docket Item 1 at 18-22. He raised that claim before a state court judge who rejected it on two grounds. Docket Item 1-3 at 6-7. First, the judge found that Sabo's claim was based solely on Sabo's "unsworn affidavit," lacked evidentiary support, and was unsupported by the record. *Id.* at 6. Second, he found that Sabo's claim failed on the merits because "attorneys have no affirmative duty to advise their clients regarding collateral consequences of their guilty plea." *Id.* (citing *United States v. Chaidez*, 568 U.S. 342 (2013)) (comparing with *Padilla v. Kentucky*, 559 U.S. 356 (2010), which requires

---

[8] Sabo asserts that the orders of protection do not preserve any right to litigate the orders of protection in family court. Docket Item 31 at 8-9. But the orders did in fact preserve that right. The sentencing court explicitly preserved Sabo's right to petition the family court to modify the order. Docket Item 1-6 at 16 ("[The sentencing court has] endorsed the orders of protection, subject to future [f]amily [c]ourt orders, since at that time there may be a change of circumstances and a neutral magistrate can make the determination [of] what would be in the best interests of the children."); *see also* Docket Item 24 at 2 (order of protection).

12

counsel to "provide adequate advice regarding the deportation consequences of a guilty plea").

Judge Schroeder recommended that Sabo's ineffective assistance of counsel claim be dismissed because the state court's denial of that claim was neither contrary to, nor an unreasonable application of, Supreme Court precedent. Docket Item 26 at 18. He noted that Sabo failed to cite any Supreme Court authority holding that an order of protection prohibiting contact with one's children was a consequence about which counsel must advise a defendant before a guilty plea. *Id.* at 16. He then explained that *Padilla*'s holding was limited to counsel's obligation to advise of deportation consequences, and he noted that the Second Circuit declined to impose a similar obligation even in the context of possible future civil commitment. *Id.* at 16-17 (citing *United States v. Youngs*, 687 F.3d 56, 62-63 (2d Cir. 2016)).

Sabo objects to the R&R, arguing that he did cite Supreme Court authority— *Padilla*—and that the R&R applied *Padilla* too narrowly. Docket Item 31 at 9-10. He asserts that *Padilla* rejected any distinction between direct and collateral consequences of a plea and held that counsel who fails to advise a defendant of *any* "severe penalty," including but not only deportation, is ineffective. *Id.* Therefore, he argues, the state court's denial of his ineffective assistance of counsel claim was contrary to or an unreasonable application of Supreme Court precedent. *Id.*

Sabo is correct that in *Padilla*, the Supreme Court observed that it "never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonably professional assistance' required under *Strickland*." *Padilla*, 559 U.S. at 365. But his argument that the Supreme Court flat-out "rejected" any

13

distinction between direct and collateral consequences—and, therefore, that the state court's denial of his claim was contrary to Supreme Court law—reaches too far.  Indeed, in the sentence that followed the one above, the *Padilla* Court stated: "[w]hether that distinction is appropriate is a question we need not consider in this case because of the unique nature of deportation."  *Id.*  What is more, just three years later in *Chaidez*, the Court explicitly noted that *Padilla* "did not eschew the direct-collateral divide across the board" but "[r]ather[ ]relied on the *special* 'nature of deportation'—the severity of the penalty and the 'automatic' way it follows from conviction—to show that" the distinction was ill suited in *Padilla*'s case.  568 U.S. at 355 (emphasis added).  So Sabo is simply incorrect to the extent he argues that the failure to advise of any significant collateral consequence necessarily constitutes ineffective assistance.

Sabo also argues that the R&R erred because "[t]he plain text of *Padilla* does not [] limit its application" to the failure to advise about the consequence of deportation; Sabo says that *Padilla* applies whenever a "severe penalty" is at stake.  Docket Item 31 at 10.  But *Padilla* emphasized the "unique" nature of deportation and its close connection to the criminal process before concluding that *Strickland* applied to advice regarding the risk of deportation:

> Deportation as a consequence of a criminal conviction is, because of its close connection to the criminal process, uniquely difficult to classify as either a direct or a collateral consequence. The collateral versus direct distinction is thus ill suited to evaluating a *Strickland* claim *concerning the specific risk of deportation*.  We conclude that *advice regarding deportation* is not categorically removed from the ambit of the Sixth Amendment right to counsel.  *Strickland* applies to Padilla's claim.

*Padilla*, 559 U.S. at 366 (emphasis added).  So contrary to Sabo's argument, *Padilla* may well be so limited.

14

Regardless, Sabo's claim that the state court and the R&R erred in applying *Padilla* fails. Even if *Padilla* applies to other severe penalties, Sabo has not demonstrated that the state court was unreasonable in declining to find the penalty here—the possibility of orders of protection that would apply to Sabo's children— so severe that counsel must advise a defendant of that possibility. As Judge Schroeder explained, the *Padilla* Court focused on the fact that deportation was "nearly automatic" given the defendant's plea. *See Youngs*, 687 F.3d at 63 (citing *Padilla*, 559 U.S. at 366-69). In contrast, the orders of protection here were not. As explained above, the sentencing court exercised its discretion in issuing the orders and left the orders "subject to future [f]amily [c]ourt orders." *See supra* at 11-12. Moreover, as also noted above, the orders of protection were subject to review and did not terminate Sabo's rights as a parent. So the collateral consequence here was neither as severe, nor as automatic, as the one in *Padilla*.

In sum, this Court agrees with Judge Schroeder that the state court did not ignore or unreasonably apply Supreme Court precedent in denying Sabo's ineffective assistance of counsel claim. For that reason, Sabo is not entitled to habeas relief on that ground.[9]

---

[9] Judge Schroeder also found that even if the state court's application of *Padilla* was unreasonable and the first prong of *Strickland* was met, Sabo cannot establish a "reasonable probability that, but for counsel[s'] error[], he would not have pleaded guilty and would have insisted on going to trial." Docket Item 26 at 17 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Sabo's affidavit supporting his motion to vacate in state court stated that he "would not have pleaded guilty if [he] had been advised that [his] plea would result in the direct termination of [his] parental rights." Docket Item 1-2 at 4. Sabo objects to the R&R for dismissing his statement as conclusory and unsupported. Docket Item 31 at 11. He argues that at the pleading stage of his motion to vacate, nothing more was required of him, and that if the state court or Judge Schroeder held a hearing, he would have provided further support for his assertion. *Id.*

15

## **CONCLUSION**

For the reasons stated above and in the R&R, Sabo's petition for a writ of habeas corpus, Docket Item 1, is DENIED, and this matter is DISMISSED. The Clerk of the Court shall close the file.

This Court also certifies under 28 U.S.C. § 2253(c)(2) that because the issues raised here are not the type of issues that a court could resolve in a different manner, and because these issues are not debatable among jurists of reason, the petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, the Court denies a certificate of appealability.

Sabo must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within 30 days of the date of judgment in this action.

SO ORDERED.

Dated: December 28, 2021
Buffalo, New York

/s/ *Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

---

Because this Court finds that Sabo failed to demonstrate that the state court's decision unreasonably applied *Padilla* or the first prong of *Strickland* and that his challenge to the state court's denial of his ineffective assistance of counsel fails for that reason, the Court need not and does not reach this argument.

16